UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HARRISON and DAWN HARRISON, | Case No. |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| GLENWOOD ACADEMY, | **JURY DEMANDED** |
| Defendant. | |

Now come the Plaintiffs, JAMES HARRISON and DAWN HARRISON, by and through their attorneys and for their Complaint against the Defendant, GLENWOOD ACADEMY, Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages and equitable and injunctive relief for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as amended, and for defamation per se under Illinois common law.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

5. All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

a. Plaintiff James Harrison filed a Charge of Discrimination, number 440-2016-03149, with the Equal Employment Opportunity Commission ("EEOC") on April 8, 2016.

b. Plaintiff Dawn Harrison filed a Charge of Discrimination, number 440-2016-03148, with the EEOC on April 8, 2016.

c. On November 5, 2018, the EEOC issued a Determination in favor of James Harrison, finding that the evidence obtained by the EEOC through its investigation established reasonable cause to believe that Defendant discriminated against a class of individuals, including James Harrison, on the basis of their race, White, by subjecting them to different terms and conditions of employment, and discharging them, in violation of Title VII.

d. On November 5, 2018, the EEOC issued a Determination in favor of Dawn Harrison finding that the evidence obtained by the EEOC through its investigation established reasonable cause to believe that Defendant discriminated against a class of individuals, including Dawn Harrison, on the basis of their race, White, by subjecting them to different terms and conditions of employment, and discharging them, in violation of Title VII.

e. After its attempts at reconciliation failed, the EEOC issued a Notice of Suit Rights to Plaintiff James Harrison for his Charge of Discrimination on December 20, 2018.

f. After attempts at reconciliation failed the EEOC issued a Notice of Suit Rights to Plaintiff Dawn Harrison for her Charge of Discrimination on December 20, 2018.

**PARTIES**

6. Plaintiff James Harrison is an individual who at the time of the events stated herein resided in Glenwood, Illinois.

7. Plaintiff Dawn Harrison is an individual who at the time of the events stated herein resided in Glenwood, Illinois.

8. On information and belief, Defendant is a corporation of the State of Illinois, whose principal place of business is located in Glenwood, Illinois.

9. Plaintiffs and Defendant are all "persons" as defined in 42 U.S.C. § 2000e(a).

10. Defendant is an "employer" as defined in 42 U.S.C. § 2000e(b), as, on information and belief, it engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

11. Plaintiffs are "employees" as defined in 42 U.S.C. § 2000e(f) as they were individuals employed by an employer, the Defendant.

**BACKGROUND FACTS**

12. Plaintiffs began their employment with Defendant on or about August 7, 2014.

13. Plaintiffs' most recent positions with Defendant were as House Parents.

14. Plaintiffs performed the duties of their jobs to all legitimate expectations during their employment with Defendant.

15. Throughout Plaintiffs' employment with Defendant, Defendant treated its White employees differently than its similarly-situated African-American employees. Examples of such treatment include, but not limited to, the following:

    a. During or about November of 2014, an African-American employee stated to a White employee, "Thanks for showing me that all white people aren't

3

    the devil." The employee who made that statement did not receive any disciplinary action.

b. Two White employees were terminated during or about February of 2015 after several African-American high school students yelled at and threatened those White employees. The students were later heard boasting about how they "got them white bitches fired." Those two White employees were replaced by African-American employees.

c. During or about early September of 2015, an African-American house parent repeatedly harassed Plaintiffs and Plaintiffs' students for being late to the "morning report," despite the fact that Plaintiffs and their students always reported before the designated 6:55 a.m. reporting time.

d. White house parents were banned from keeping dogs, while multiple African-American house parents were allowed to keep dogs, cats, and other pets.

e. During or about November of 2015, several African-American house parents stopped supervising the lunch tables to which they were assigned, but they received no disciplinary action.

f. During or about December of 2015, Plaintiffs were told by a supervisor that one of their students needed a "strong black male house parent" and Plaintiffs were thus inadequate to care for that student.

g. When Plaintiffs reported this supervisor's comment stated above to Colleen Carter, Defendant's Vice-President of Academic and Residential Programs,

4

       Carter excused the supervisor's comment as well as Defendant's detrimental treatment of its White employees.

h. During or about January of 2016, Defendant began requiring all house parents to attend weekly meetings. Several African-American house parents disregarded these meetings without any disciplinary action being taken against them. However, White employees that did not attend these meetings and stay for the entirety of each meeting were reprimanded.

i. During or about January of 2016, an African-American employee was caught running a private business out of Defendant's gymnasium, but no disciplinary action was taken against him.

j. During or about January of 2016, several African-American employees were caught using Defendant's facilities after hours and on weekends for private parties and events. None of those African-American employees had disciplinary actions taken against them, despite leaving the facilities unlocked, filled with trash, and with the lights on.

k. All house parents were told by Defendant that they could not have jobs outside their positions with Defendant without seeking permission from Defendant first, and that their second jobs were not allowed interfere with their positions with Defendant. This policy was enforced against Defendant's White employees. However, six African-American employees were allowed to continue working their second jobs, and at least four of those African-American employees' second jobs interfered with their positions with Defendant.

    l.    Defendant's African-American employees received priority when requesting time off, while White employees were often denied time off or approval of their requests for time off were unnecessarily delayed.

    m.    Kitchen orders from cottages overseen by White house parents were frequently ignored and not delivered, while kitchen orders from cottages overseen by African-American house parents were filled immediately, whether or not the African-American house parents' requests were made in writing.

    n.    During or about March of 2016, an African-American house parent threatened an African-American student and called the student a "nigger" in front of Defendant's maintenance staff. That African-American house parent was suspended for two days, but was not terminated.

16. During or about March of 2016, Plaintiffs were both suspended pending an investigation because Plaintiff James Harrison allegedly asked a student, "What the hell are you doing?"

17. Following an alleged "investigation," both Plaintiffs were terminated by Defendant on or about March 15, 2016.

18. Defendant treated similarly-situated employees of other racial backgrounds, including African-Americans, in a different manner than it treated its White employees, including Plaintiffs.

19. Defendant issued a termination letter to Plaintiffs stating that Plaintiffs were terminated because allegedly, they repeatedly used obscene language in front of and towards students, verbally abused and humiliated students under their care, failed to conduct themselves in

6

a professional manner, and interfered with other staff members' ability to perform their job functions.

20. The statements made in Defendant's termination letter are a gross misrepresentation of Plaintiffs' performance while working for Defendant.

21. On or about May 11, 2016, Defendant sent Plaintiffs another letter, stating that new evidence had been found since Plaintiffs' termination in March of 2016 which supposedly proved that:

    a. Plaintiffs cultivated and persuaded other house parents to segregate students along racial lines; and

    b. Plaintiffs divided house parents along racial lines by making unsupported inferences that "the blacks" were going to take over and White employees would be fired.

22. Said letter also stated that Plaintiffs' alleged actions violated Defendant's anti-discrimination policies, and local, state, and federal laws prohibiting racial discrimination.

23. None of the allegations in either of Defendant's letters were supported by any evidence whatsoever. Simply stated, the allegations made against Plaintiffs in these letters were false.

24. Despite the complete lack of evidence supporting Defendant's claims against Plaintiffs, Defendant repeatedly told other house parents, students, and staff that Plaintiffs acted in accordance with these false and baseless allegations.

25. As a result of Defendant's deceitful, false, and baseless allegations, Plaintiffs have been unable to return to work in the social services field, their preferred profession.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## DUE TO DISCRIMINATION

26. Plaintiffs incorporate all of the allegations and statements contained in paragraphs 1 through 25 above as if reiterated herein.

27. Defendant, in violation of 42 U.S.C. § 2000e, has denied and continues to deny Plaintiffs an equal opportunity for employment due to their race, White.

28. During Plaintiff's employment with Defendant, they were subjected to racial discrimination in that there was a double standard between the treatment of White employees and non-White employees.

29. The discriminatory treatment to which Plaintiff was subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were undertaken in their capacities as the employees, agents, and/or authorized representatives of Defendant.

30. Defendant, through its employees, agents, and/or authorized representatives, knew that its termination and discriminatory treatment of Plaintiffs because of their race violated Title VII.

31. This is a proceeding for declaratory judgment as to Plaintiffs' right of a permanent injunction restraining Defendant from maintaining a policy, practice, usage or custom of discriminating against Plaintiffs because of their race with respect to compensation, terms conditions, and/or privileges of employment, depriving Plaintiffs of equal employment opportunities, and otherwise adversely affect their status as employees, because of their race. This Complaint also seeks restitution to Plaintiffs for the denial of all of their rights, privileges, benefits,

and income that would have been received by them but for Defendant's unlawful and illegal discriminatory acts and practices.

32. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs alleged herein, and a claim for injunctive relief is their only means of securing adequate relief. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's policy, practice, custom, and usage as set forth herein, unless and until it is enjoined by the Court.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## DUE TO RETALIATION

33. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 32 above as if fully reiterated herein.

34. Defendant, in violation of 42 U.S.C. § 2000e, has denied and continues to deny Plaintiffs an equal opportunity in retaliation for engaging in a legally-protected activity.

35. During Plaintiffs' employment with Defendant and when Plaintiffs were terminated by Defendant, they were subjected to retaliation for engaging in a legally-protected activity, as set forth above.

36. The retaliatory treatment to which Plaintiffs were subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were undertaken in their capacities as the employees, agents and/or authorized representatives of Defendant.

37. Defendant, through its employees, agents and/or authorized representatives, knew that its retaliation against Plaintiffs for filing engaging in a legally-protected activity violated Title VII.

38. This is a proceeding for declaratory judgment as to Plaintiff's right of a permanent injunction restraining Defendant from maintaining a policy, practice, usage, or custom of retaliating against Plaintiffs for partaking in a legally-protected activity, with respect to compensation, terms, conditions, and/or privileges of employment, depriving Plaintiffs of equal employment opportunities, and otherwise adversely affect their status as employees, for engaging in a legally-protected activity. This Complaint also seeks restitution to Plaintiffs for the denial of all of their rights, privileges, benefits, and income that would have been received by them but for Defendant's unlawful and illegal retaliatory acts and practices.

39. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrongs alleged herein, and a claim for injunctive relief is their only means of securing adequate relief. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendant's policy, practice, custom, and usage as set forth herein, unless and until it is enjoined by the Court.

## COUNT II
## COMMON LAW DEFAMATION PER SE

40. Plaintiffs incorporate all of the allegations and statements contained in paragraphs 1 through 39 above as if reiterated herein.

41. In taking the actions outlined above, Defendant made false statements about Plaintiffs.

42. Defendant's false statements about Plaintiffs included words which implied that Plaintiffs were unable to perform their employment duties and lacked integrity in performing such duties.

43. Defendant's false statements about Plaintiffs included words that implied that Plaintiffs lacked ability, and otherwise prejudiced Plaintiffs, in their profession.

44. Defendants made unprivileged publications of those statements to third parties.

45. Defendant's statements defaming Plaintiffs were made intentionally and with malice, willfulness, and knowledge of the statements falsity.

46. As a result of Defendant's defamatory statements Plaintiffs suffered damages which include, but are not limited to, mental anguish, humiliation, reputational damage, and anxiety.

Wherefore, Plaintiffs, JAMES HARRISON and DAWN HARRISON, respectfully pray this Honorable Court enter judgment against Defendant, GLENWOOD ACADEMY, as follows:

    a. Declaring the Defendant's practices complained of herein unlawful and in violation of Title VII;

    b. Permanently enjoining Defendant, its agents, successors, officers, employees, representatives, attorneys, and those acting in concert with it or them from engaging in the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

    c. Ordering modification or elimination of the practices, policies, customs, and usages set forth herein, and all other such practices shown to be in violation of applicable law, ensuring Defendant will not continue to discriminate on the basis of race or retaliate for engaging in a protected activity;

    d. Immediately assigning Plaintiffs to the positions they would now be occupying but for the discriminatory practices of Defendant, and adjusting the wage rates, salaries, bonuses, and benefits for Plaintiffs to those which they would have received but for the discriminatory and retaliatory practices of Defendant, or awarding Plaintiffs front-end and future pay;

e.  Compensating and making Plaintiffs whole for all earnings, wages, bonuses, and other benefits that Plaintiffs would have received but for the discriminatory and retaliatory practices of Defendant;

f.  Compensating and making Plaintiffs whole for all other damages Plaintiffs incurred as a result of the discriminatory and retaliatory practices of Defendant;

g.  Compensating and making Plaintiffs whole for all damages Plaintiffs incurred as a result of Defendant's defamatory statements;

h.  Awarding Plaintiffs all witness fees, court costs, and other litigation costs incurred in this Action, including reasonable attorneys' fees; and

i.  Awarding Plaintiffs compensatory damages and/or punitive damages; and

j.  Granting such other relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiffs prevail on any of their claims in this action.

RESPECTFULLY SUBMITTED,

JAMES HARRISON and DAWN HARRISON

By: /s/ David B. Levin
Attorney for Plaintiffs
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com